2005-NMCA-079

114 P.3d 399

**STATE of New Mexico, ex rel., Patricia A. MADRID, Attorney General, and New Mexico State Game Commission of the State of New Mexico, Plaintiffs–Appellants,**

v.

**UU BAR RANCH LIMITED PARTNERSHIP (a Nevada limited partnership), Western States Management Services, Ltd. (a Nevada limited liability corporation), and any other persons unknown, claiming any right, title, estate, lien, or interest in the real property described in the complaint adverse to Plaintiffs' ownership, or any cloud on Plaintiffs' title, Defendants–Appellees.**

Nos. 23,418, 24,055.

Court of Appeals of New Mexico.

April 25, 2005.

Certiorari Denied, No. 29,231, June 6, 2005.

Patricia A. Madrid, Attorney General, David K. Thomson, David A. Stevens, Alvin Garcia, Assistant Attorneys General, Santa Fe, Bennett S. Cohn, West Palm Beach, FL, for Appellants.

Henry M. Bohnhoff, William G. Gilchrist, IV, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Appellees.

*OPINION*

ROBINSON, J.

{1} The Court has decided to revise the opinion filed on March 8, 2005. Therefore, the opinion is hereby withdrawn and the following opinion is substituted. The Motion

for Rehearing filed on March 23, 2005, by Defendant UU Bar Ranch Limited Partnership, is hereby denied.

{2} In this appeal, we are called upon to determine who is the rightful titleholder to a road that provides access to the Whites Peak area of state trust lands in Colfax County. The State of New Mexico and the New Mexico State Game Commission (collectively referred to as Plaintiff) appeal the district court's judgment quieting title in favor of UU Bar Ranch Limited Partnership (Defendant). For the reasons that follow, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

{3} The real property at issue in this case is a 2.6 mile stretch of dirt road (the Road) that lies completely within the exterior boundaries of Defendant's ranch. Prior to statehood, the Territory of New Mexico owned the Road as part of the system of territorial public roads, and the Road was recognized as part of El Camino Real and the Mountain Branch of the Santa Fe Trail. When New Mexico became a state in 1912, all of the Territory's real property interests, including the Road, were transferred to the State of New Mexico pursuant to our state constitution. The Road came to be designated on most maps as a part of State Highway 21, which was a north/south route from Cimarron south through Rayado to Ocate. The Road itself enjoyed continuous use by hunters during the hunting season, and occasional use by others, for access to state trust lands until 1997.

{4} On October 24, 1985, as part of an effort to reduce the number of unmaintained roads that were part of the state highway system, the State Highway Department executed a declaration of vacation and abandonment for a 4.7 mile segment of State Highway 21. Contemporaneously with the abandonment of the 4.7 mile portion of Highway 21, the Highway Department executed a quitclaim deed that Plaintiff argued conveyed the Road to the Game Commission. Ultimately, the district court found that the 4.7 mile abandoned segment of Highway 21 included the Road, but that the quitclaim deed did not include the Road.

{5} At trial, and now on appeal, the parties expend significant effort arguing about whether the Highway Department's abandonment of the Road was conditioned on a successful administrative transfer of the Road by quitclaim deed to the Game Commission, so that access to the Whites Peak area would remain open to the public. In addition, even assuming that the Highway Department intended to administratively transfer the Road to the Game Commission, the parties vigorously dispute whether the evidence established that the description in the quitclaim deed included the Road. As we will discuss later in this opinion, we need not decide whether the district court correctly concluded that the quitclaim deed did not convey the Road to the Game Commission. Regardless of the effect or intent of the deed, between 1985 and 1997, neither the Game Commission, nor the Game and Fish Department, acting as the Game Commission's agent, asserted any ownership of, control over, or interest in the Road.

{6} In the summer of 1997, Defendant began to investigate whether it was the exclusive owner of the Road. In September and October of 1997, the Game and Fish Department, with the participation of representatives from the Highway Department and Attorney General's Office, investigated whether the Game Commission was the owner of the Road. On October 17, 1997, and November 15, 1997, the Game and Fish Department and the Governor issued respective letters disclaiming any ownership interest by the Game Commission in the Road, concluding instead that the Road was abandoned and privately owned. In a subsequent letter dated November 21, 1997, the Secretary of the State Highway Department also wrote that the Road was abandoned. Upon the completion of its investigation in the fall of 1997, Defendant concluded that it was the exclusive owner of the Road and, therefore, built and locked a gate at the northern terminus of the Road. Since the fall of 1997, Defendant has had exclusive possession of the Road.

{7} In response to Defendant's actions, the Attorney General filed a petition on behalf of the State of New Mexico seeking

declaratory and injunctive relief. Because the district court ruled that the Attorney General lacked standing in her own right to pursue injunctive relief, the Attorney General's Office filed an amended complaint naming the State of New Mexico and the Game Commission as Plaintiffs. The amended complaint no longer sought injunctive relief, but instead sought to quiet title to the Road. Defendant's answer asserted a number of affirmative defenses, including lack of standing, estoppel, waiver, laches, and abandonment. Defendant also asserted counterclaims for its own declaratory relief and damages for inverse condemnation.

{8} Because the Attorney General filed the amended complaint without joining the Highway Department, Defendant reasserted a motion · to dismiss for lack of standing. However, because Plaintiff was no longer seeking injunctive relief, but simply were trying to establish title to the Road, the district court denied the motion believing that Plaintiff did have standing to proceed. Nevertheless, the district court ultimately ruled against Plaintiff and quieted title to the Road in Defendant.

{9} In quieting title to the Road in Defendant, the district court concluded that the Highway Department had abandoned the Road. The district court further concluded that the disputed quitclaim deed did not convey title to the Road to the Game Commission. Accordingly, as a result of the abandonment of the Road, the district court ruled that fee simple title to the Road reverted to Defendant through its predecessor in interest, who owned the abutting land at the time the Road was purportedly abandoned. The district court also ruled that waiver, acquiescence, equitable estoppel, and laches precluded Plaintiff from asserting any claim to the Road. The district court subsequently awarded Defendant its costs. In these consolidated appeals, Plaintiff challenge the district court's quiet title judgment and award of costs.

## DISCUSSION

{10} As we explain below, the district court erred in concluding that the Road was abandoned in accordance with New Mexico law. Therefore, without a legally effective abandonment of the Road, the district court's conclusion that the Road reverted to Defendant cannot stand because title remains with the State. And because we conclude that Defendant has no basis for asserting title to the Road, we also conclude that the district court erred in ruling that Plaintiff were equitably barred from asserting a claim to the Road. Finally, we need not decide whether the disputed quitclaim deed was an effective transfer of title to the Road from the Highway Department to the Game Commission because, without a legally-effective abandonment, title remains with the Highway Department who is free to convey, or reconvey, title as it sees fit.

## STANDARD OF REVIEW

{11} To the extent that this appeal requires us to review the sufficiency of the evidence to support the district court's quiet title judgment, we view the evidence in the light most favorable to the district court's findings, indulge all reasonable inferences in support of the district court's decision, and disregard all evidence to the contrary. *See Martinez v. Martinez*, 1997–NMCA–096, ¶ 10, 123 N.M. 816, 945 P.2d 1034. To the extent that our review of the district court's quiet title judgment requires us to interpret a statute, that is a question of law that we review de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066; *see also Cooper v. Chevron U.S.A., Inc.*, 2002–NMSC–020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo.").

**A.** *The Road was not legally abandoned.*

{12} Plaintiff argue that the district court erred in ruling that the Highway Department legally abandoned the Road when it executed a formal declaration of vacation and abandonment of the Road on October 24, 1985. Plaintiff does not dispute that the Highway Department wanted to relinquish its own control over the Road. However, as noted above, the parties disagree about whether the Highway Department's attempted abandonment of the Road was conditioned

on an administrative transfer of the Road to the Game Commission that would ensure continued public access to the Whites Peak area via the Road. But we need not decide whether the district court correctly resolved that dispute because, regardless of the Highway Department's intent, we agree with Plaintiff that the attempted abandonment was legally ineffective under the relevant statutory law governing the procedures for abandoning public roads in New Mexico.

■ {13} Plaintiff generally assert that the purported abandonment was not undertaken in accordance with the relevant statutes and specifically argue that (1) the purported abandonment was not approved by the State Board of Finance as required by statute, (2) the purported abandonment was not approved by the State Highway Commission, (3) Defendant was barred by the statute of limitations from using the purported abandonment as a means for claiming title to the Road, (4) the purported abandonment would violate the anti-donation clause of our state constitution, and (5) the purported abandonment is barred by the doctrine of estoppel by deed. We find Plaintiff's argument regarding the need for Board of Finance approval dispositive and, therefore, need not address their other anti-abandonment arguments.

{14} At the time that the Highway Department sought to abandon the Road, NMSA 1978, § 13-6-2(A) (1984) provided that:

> Any state agency or local public body is empowered to sell or otherwise dispose of real or personal property belonging to the state agency or local public body. No sale or disposition of real or personal property having a current resale value of more than two thousand five hundred dollars ($2,500) shall be made by any state agency or local public body unless the sale or disposition has been approved by the state board of finance.

{15} Initially, we note that there was no argument below, nor in the briefs on appeal, that Section 13-6-2 is inapplicable because the resale value of the real property comprising the Road would be less than $2,500. *See State v. Thomson,* 79 N.M. 748, 749-50, 449 P.2d 656, 657-58 (1969) (declining to affirm quiet title on a basis that was not argued below or in briefs on appeal); *see also Meiboom v. Watson,* 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (noting that an appellate court will not affirm the trial court on a fact-dependent ground that was not decided by the trial court). However, Defendant's motion for rehearing nonetheless asserts that we should affirm on this basis because it would not be unfair to Plaintiff to do so. *See id.* (recognizing that an appellate court may affirm on a ground not relied upon by the trial court if it would not be unfair to the appellant to do so). In particular, Defendant maintains that it would not be unfair to affirm on this basis because it was Plaintiff's burden to prove a value over $2,500. Defendant also alleges there was evidence in the record from which this Court could infer that the value of the Road was less than $2,500. We are unpersuaded by both of Defendant's contentions.

■ {16} First, we reject Defendant's contention that it was Plaintiff's burden to prove the value of the Road was more than $2,500. Plaintiff's complaint sought to quiet title in the Game Commission based on the quit claim deed regardless of whether the Road was simultaneously abandoned. In contrast, Defendant's counterclaim for quiet title relied on invalidating the deed and establishing an otherwise valid abandonment of the Road. Therefore, we believe the burden was on Defendant, not Plaintiff, to prove a valid abandonment.

■ {17} Second, even assuming that it otherwise would not be unfair to Plaintiff to affirm if the value of the Road was less than $2,500, we disagree with Defendant's contention that there is enough evidence in the record to establish that the value of the Road was in fact less than $2,500. Defendant suggests that we could infer a value less than $2,500 because there was evidence that Defendant's ranch was worth about $131 per acre. Defendant believes it would be appropriate to simply multiply the acreage of the Road by $131 to arrive at a value less than $2,500. However, to do so would require us to infer that the land encompassing the Road was comparable to the adjacent land encom-

passing the ranch. However, as the protracted battle over title to the Road demonstrates, there is every reason to believe that the intrinsic value of the Road is higher than the ranch land, especially given that the Road is critical to access to state trust lands.

{18} In short, Plaintiff did not have the opportunity to demonstrate that the value of the Road was not comparable to the value of the ranch land, and any finding to that effect would, in all likelihood, require credibility determinations and inferences that should have been made by the district court in the first instance and were not. As such, we are loathe to affirm the district court on grounds not considered by that court because it would be unfair to Plaintiff to do so. Accordingly, we conclude that Section 13–6–2 does apply under the circumstances of this case.

{19} Moreover, it is undisputed that the Highway Department did not obtain Board of Finance approval for the abandonment of the Road. Therefore, we hold that the lack of Board of Finance approval invalidated the attempted abandonment of the Road. *See N.M. Dep't of Health v. Compton,* 2000–NMCA–078, ¶ 11, 129 N.M. 474, 10 P.3d 153 (recognizing that "when the language of a statute is clear and unambiguous, it must be given effect by the courts" and in general " 'use of the word "shall" ... imposes a mandatory requirement' ") (quoting *Redman v. Bd. of Regents,* 102 N.M. 234, 238, 693 P.2d 1266, 1270 (Ct.App.1984)); *see also* NMSA 1978, § 12–2A–4(A) (1997) (" 'Shall' and 'must' express a duty, obligation, requirement or condition precedent.").

{20} Defendant asserts that Board of Finance approval was not required for a number of reasons. First, Defendant suggests that because NMSA 1978, § 67–2–6 (1975) specifically authorizes the abandonment of state highways its procedures should override the procedural requirements in Section 13–6–2 for the general sale or disposition of state property. *See generally State ex rel. Schwartz v. Sanchez,* 1997–NMSC–021, ¶ 8, 123 N.M. 165, 936 P.2d 334 (recognizing the principle of statutory interpretation that favors the application of the more specific statute over the more general statute). However, the general/specific rule of statutory construction is only applicable when the two statutes are in conflict. *See generally Citizens for Incorporation, Inc. v. Bd. of County Comm'rs,* 115 N.M. 710, 716, 858 P.2d 86, 92 (Ct.App.1993) (holding that the general/specific rule of statutory construction "applies only when the statutory provisions are conflicting"); *State ex rel. Stratton v. Gurley Motor Co.,* 105 N.M. 803, 805, 737 P.2d 1180, 1182 (Ct.App.1987) (holding that "[i]n order for a specific statute to prevail over the general, there must exist conflicting statutory provisions ... such that a necessary repugnancy cannot possibly be harmonized"). For the reasons that follow, we conclude that the statutes can be harmonized with each other, and that the general/specific rule of statutory construction does not aid Defendant. Section 67–2–6 provides that:

Property or property rights acquired by purchase or condemnation by the state or any commission, department, bureau, agency or political subdivision of the state for public road, street or highway purposes shall not revert until such property or property rights are vacated or abandoned by formal written declaration of vacation or abandonment which has been duly declared by the state or any commission, department, institution, bureau, agency or political subdivision of the state in whom the property or property right has vested. The right to abandon and vacate shall exist regardless of whether the public road, street or highway was created by the legislature or otherwise.

{21} While it is true that Section 67–2–6 does specifically address the abandonment and vacation of public roads, the statute simply requires a "duly declared" written abandonment. The statute is silent regarding what constitutes a "duly declared" abandonment. In fact, it is not entirely clear whether the procedure for abandonment contained in Section 67–2–6 is applicable in this case since the Road was not acquired through purchase or condemnation. In short, although Section 67–2–6 does give the State the right to abandon or vacate a public road, the statute is less than clear on the procedure to be used.

{22} Given the ambiguity in Section 67–2–6, we cannot say that Section 67–2–6 should be applied to the exclusion of Section 13–6–2. Instead, we conclude that both statutes must be construed and applied together to give effect to legislative intent. *See Quantum Corp. v. State Taxation & Revenue Dep't,* 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848 (recognizing that a statute whose construction is in question should "be read in connection with other statutes concerning the same subject matter"); *see also Key v. Chrysler Motors Corp.,* 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 (1996) ("In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background."). Accordingly, Board of Finance approval was required to effectuate the abandonment of the Road.

{23} Defendant relies on *Walker v. Coleman,* 540 So.2d 983 (La.Ct.App.1989) as support for its general/specific argument. In *Walker,* a state agency attempted to sell an unused public road pursuant to a statute that generally allowed the state agency to sell public property. *Id.* at 984. The court invalidated the sale because the statute specifically addressing the disposition of abandoned roads only provided for reversion of such roads to the contiguous landowners. *Id.* at 986. We find *Walker* distinguishable from this case because, as discussed above, Section 67–2–6 and Section 13–6–2 complement, rather than conflict with one another, unlike the statutes at issue in *Walker.*

{24} Defendant also contends that Section 13–6–2 is inapplicable because the abandonment of a public road is not a "disposition" within the meaning of the statute. Defendant suggests that a "disposition" is only the "act of transferring something to another's care or possession." BLACK'S LAW DICTIONARY 484 (7th ed.1999). Under that definition, Defendant maintains that an abandonment does not constitute a disposition because the government's interest in the Road is simply extinguished and nothing is transferred. We disagree with this view of Section 13–6–2 for two reasons. First, we believe that a "disposition" does encompass an abandonment under a plain reading of the statute. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 654 (3rd ed.1971) (defining "disposition" to include relinquishing or ridding oneself of control). Disposition is equated with surrender or abandonment elsewhere in the law. *See Reeves v. Jenkins,* 439 P.2d 941, 945 (Okla.1968) (stating that "[a] bankruptcy receiver ordinarily has no power to surrender, abandon, or make some other disposition of property"); *see also Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers,* 1998–NMSC–020, ¶ 27, 125 N.M. 401, 962 P.2d 1236 (recognizing that the plain language of a statute is the primary indicator of legislative intent). Second, Defendant cannot simply ignore the fact that if the Road were truly abandoned, title to the Road would revert to another, which we assume, without deciding, would be Defendant as the abutting landowner. Thus, even under Defendant's restrictive interpretation of the term "disposition," an abandonment would have the effect of transferring possession of the Road to another. Accordingly, we reject Defendant's contention that Section 13–6–2 is inapplicable to abandonments.

{25} Finally, Defendant points to evidence in the record that, since at least 1980, the Highway Department had not sought Board of Finance approval in connection with any of its state highway abandonments. Defendant also notes that the Highway Department's 1982 abandonment guide does not list Board of Finance approval as one of the steps in the abandonment checklist, and the Highway Department would only seek Board of Finance approval for the abandonment of state highways that were originally created through the purchase of a right-of-way. In short, since there was evidence indicating that the Highway Department believed it did not need Board of Finance approval to abandon state highways, Defendant argues we should defer to the Highway Department's interpretation of the statute it is charged with administering. *See Atlixco Coalition v. Maggiore,* 1998–NMCA–134, ¶ 30, 125 N.M. 786, 965 P.2d 370 (recognizing that courts will generally defer to an agency's interpretation of an ambiguous statute or regulation

that it is charged with administering if it implicates the agency's expertise).

{26} Furthermore, " 'it is the function of the courts to interpret the law,' and courts are in no way bound by the agency's legal interpretation." *Chavez v. Mountain States Constructors*, 1996–NMSC–070, ¶ 21, 122 N.M. 579, 929 P.2d 971 (quoting *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995)). And given our conclusion that the legislature intended to require Board of Finance approval at the time that the Highway Department attempted to abandon the Road, we are not persuaded that we should defer to a purported agency interpretation that would be contrary to legislative intent. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998–NMSC–050, ¶ 6, 126 N.M. 413, 970 P.2d 599 (declining to defer to an agency interpretation of an ordinance that was contrary to legislative intent).

{27} For all of the foregoing reasons, we therefore hold that the lack of Board of Finance approval prevented the Highway Department from executing a legally valid abandonment of the Road. And without the abandonment of the Road, even the district court acknowledged that the Road could not revert to Defendant, or its predecessor in interest, because title to the Road remained with the State regardless of which state agency was responsible for managing and maintaining the Road.

{28} We recognize that Defendant believes Plaintiff lacked standing to pursue a quiet title action that would declare title to the Road in the Highway Department. However, the amended complaint only sought to quiet title in the Game Commission and the Game Commission is a party to this action. We agree with the district court's conclusion that Plaintiff therefore had standing to proceed. We need not decide whether standing would exist in this case to quiet title in the name of the Highway Department because that is not the relief Plaintiff requested. We do note, however, that no one has disputed that title to the Road was held by the Highway Department prior to the failed abandonment. Presumably, then, title would remain with the Highway Department unless Defendant could show that it could establish title to the Road through some other means than reversion by abandonment.

**B.** *Defendant Cannot Establish Title Based on Waiver, Laches, and Estoppel.*

{29} Having concluded that the district court erred in quieting title in favor of Defendant in light of the ineffective abandonment of the Road, we turn now to Defendant's claims based on waiver, laches, and estoppel. Defendant maintains that by failing to negate the letters from the Game and Fish Department and the Governor, the Game Commission's actions amount to a waiver by acquiescence of the right to claim title to the Road. Since the purported abandonment of the Road is an ineffective means for Defendant to claim title to the Road through reversion, Defendant's waiver by acquiescence claim is an apparent attempt to secure title through alternate means. However, New Mexico case law specifically "hold[s] that title to state land cannot be obtained pursuant to the doctrine of acquiescence." *Stone v. Rhodes*, 107 N.M. 96, 99, 752 P.2d 1112, 1115 (Ct.App.1988); *see also Deaton v. Gutierrez*, 2004–NMCA–043, ¶ 16, 135 N.M. 423, 89 P.3d 672. Similarly, Defendant's affirmative defense of laches cannot be used as a means for establishing title to the Road. *Id.* ¶¶ 24–25 (rejecting an attempt to establish title through the affirmative defense of laches where the defendant failed to establish a right to title through adverse possession, acquiescence, or deed). Furthermore, it is well settled that a claimant must rely on the strength of its own title and not claimed weaknesses of his adversary when seeking to quiet title. *See Tres Ladrones, Inc. v. Fitch*, 1999–NMCA–076, ¶ 15, 127 N.M. 437, 982 P.2d 488; *Martinez*, 1997–NMCA–096, ¶ 12, 123 N.M. 816, 945 P.2d 1034; *Union Land & Grazing Co. v. Arce*, 21 N.M. 115, 152 P. 1143 (1915).

{30} To the extent that Defendant also attempts to establish title through a claim of equitable estoppel, we question whether title could be established through such means for the same reason that other affirmative defenses are an inappropriate

means for establishing title. Specifically, Defendant's estoppel argument is premised on the same governmental statements and inaction that formed the basis for the waiver by acquiescence claim rejected above. We fail to see how Defendant can establish title through an otherwise improper means simply by changing the name of the claim. Moreover, estoppel generally cannot be premised on the opinions, or advice of government officials, that are contrary to law. *See Rainaldi v. Pub. Employees Ret. Bd.*, 115 N.M. 650, 658, 857 P.2d 761, 769 (1993) (noting that courts have refused to allow estoppel against the state when the use of estoppel is based on the advice of a government official that contradicts a statute or would permit an act that is contrary to law). Although Defendant characterizes the disclaimers of interest in the Road by the Game and Fish Department and Governor as statements of fact, abandonment of the Road was a matter of· opinion dependent on a legal interpretation of what was required by New Mexico statutes to abandon a public highway. As set forth above, the statutory requirements for abandoning the Road were not met, and Defendant cannot circumvent those statutory requirements by relying on ostensible assurances to the contrary by government officials.

### C. *Defendant's Costs*

{31} Given our reversal of the district court's judgment quieting title in favor of Defendant, we also reverse the district court's award of costs to Defendant and remand for reconsideration of the question of costs.

### CONCLUSION

{32} Because the district court erred in quieting title to the Road in Defendant on the basis of the Highway Department's ineffective abandonment of the Road, we reverse the district court's quiet title judgment. And since Defendant cannot otherwise establish title through waiver by acquiescence, laches, or estoppel, we need not decide whether the quitclaim deed from the Highway Department to the Game Commission was an effective conveyance of title, since title remains

with the State in any event. *See Srader v. Verant*, 1998–NMSC–025, ¶ 40, 125 N.M. 521, 964 P.2d 82 (providing that the appellate court generally will not decide academic or moot questions); *see also In re Will of Coe*, 113 N.M. 355, 362, 826 P.2d 576, 583 (Ct.App. 1992) (noting that the function of quiet title decree is not to confer title, but merely to confirm pre-existing title).

{33} We note additionally that the record indicates that the Highway Department may have executed a second quitclaim deed in an apparent attempt to correct any deficiencies in the first quitclaim deed. We express no opinion on the effect of that deed, but simply note that as the apparent current titleholder to the Road, the Highway Department would remain free to convey, or reconvey, the Road to whomever it chooses.

{34} In light of our disposition, we need not address the remainder of the arguments raised by the parties on appeal. Because the district court apparently did not resolve the balance of Defendant's counterclaims in light of its decision to quiet title to the Road in Defendant, we leave it to the sound discretion of the district court to dispose of Defendant's outstanding counterclaims to the extent necessary.

{35} **IT IS SO ORDERED.**

KENNEDY and VIGIL, JJ., concur.