This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BOARD OF EDUCATION FOR THE QUESTA INDEPENDENT SCHOOL DISTRICT,**

Plaintiff-Appellant,

v.

**NO. 29,911 & 30,069 (Consolidated)**

**ARTESANOS DE QUESTA, a non profit corporation, and NANCY GONZALES, in her individual capacity as owner and operator of the Cariños Day Care Center, her private business,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sam B. Sanchez, District Judge**

Narvaez Law Firm, P.A.
Martin R. Esquivel
Albuquerque, NM

for Appellant

Rudy Martín
Espanola, NM

for Appellees

**MEMORANDUM OPINION**

**VANZI, Judge.**

The Board of Education for the Questa Independent School District (School Board) appeals the district court's judgment in favor of Artesanos de Questa (Artesanos), and from the district court's imposition of sanctions under Rule 1-011 NMRA. The district court ruled that equity barred the School Board from challenging the validity of a lease between the School Board and Artesanos and that the School Board could not bring an action for forcible entry or unlawful detainer against Artesanos and alleged sublessor, Nancy Gonzales (collectively, Defendants). On appeal, the School Board contends that approval of the lease by the State Board of Finance was mandatory, and lack of that approval renders the lease invalid. Thus, the School Board argues, the district court erred by failing to find the lease invalid as a matter of law and in applying equitable doctrines to bar the School Board's suit. The School Board also asserts that the district court erred in granting Rule 1-011 attorney fees in favor of Defendants because (1) the School Board did not violate the "good ground" provision of Rule 1-011, and (2) the district court failed to provide any

factual or legal basis for the award. We agree and reverse the district court's judgment in favor of Artesanos and the award of attorney fees.

**BACKGROUND**

The following facts are undisputed. Questa Independent School District (QISD) owns the La Cienega Elementary School (La Cienega) building in Questa, New Mexico. In 2000, the School Board and Artesanos, a non-profit corporation, entered into a lease for La Cienega. Artesanos agreed to pay one dollar a month for a total annual lease payment of twelve dollars. In addition, QISD would accept in-kind contributions in the amount of $1200 per month to satisfy a rental fee. Pursuant to the lease agreement, Artesanos was entitled to possession of the property for a term of twenty-four years. The State Department of Education reviewed and approved the lease. The School Board also approved the lease by vote. The lease was signed by both parties, and Artesanos entered and occupied the property.

In 2007, School Board secretary, Nancy Gonzales, opened Cariños Day Care Center (Cariños) at La Cienega. Artesanos and Gonzales entered into a "rent agreement" for that space and required Cariños to pay monthly rent. For a period of time Cariños operated as a private business. Although the lease contains a clause requiring School Board approval of subleases, the sublease between Gonzales and

Artesanos had not been submitted for School Board approval. Several School Board members raised concerns about Gonzales operating a private business at the district-owned property and initiated an investigation.

The investigation focused in part on the lease between the School Board and Artesanos. The investigator determined that NMSA 1978, Section 13-6-2.1(A) (1989) (amended 2011), requiring board of finance approval of certain leases of public property, applied to the lease between the School Board and Artesanos. The investigator determined that because neither the School Board nor Artesanos could provide evidence that the board of finance approved the lease, it was likely invalid. The investigator also concluded that Artesanos was in violation of the lease and listed the violations. After receiving the results of the investigation, the School Board voted that the lease with Artesanos would be of no further effect and that all subleases entered with Artesanos lacking School Board approval were also invalid.

The School Board gave both Artesanos and Gonzales notice that the lease was invalid, and stated that, in any event, Artesanos was in default of the lease for failure to comply with several of its provisions. The School Board gave Gonzales notice to vacate La Cienega and notified Artesanos to either vacate or renegotiate the lease. Artesanos refused, asserting that the lease was valid, that Artesanos was in full compliance, and that it intended to defend the contract for its full term.

The School Board brought separate suits against Gonzales and Artesanos for forcible entry or unlawful detainer pursuant to NMSA 1978, Section 35-10-1 (1968). In its complaint against Artesanos, the School Board alleged that the lease was invalid as a matter of law, and even if the lease was found to be valid, Artesanos was in violation of a number of its provisions. In a separate complaint against Gonzales, the School Board alleged that Gonzales entered and occupied La Cienega against the will of the owner (the School Board) and refused to vacate. The School Board sought possession of La Cienega and removal of Defendants from the property. Both Defendants answered, raising the affirmative defenses of estoppel, laches, unclean hands, and waiver. The cases were consolidated for trial.

Before trial, the parties were granted a continuance to potentially negotiate a sale of the property. A sale of the property did not occur, and litigation proceeded. During the period of the continuance, the School Board obtained inspections of La Cienega and, finding the building unsafe, attempted to close it. The district court granted Defendants' motion for a temporary restraining order preventing closure of the buildings and barring the School Board from interfering with the property. The case proceeded to trial.

In 2009, the district court held a four-day bench trial. At trial, the School Board sought a ruling that the lease was invalid as a matter of law. In lieu of closing

arguments, the School Board and Defendants filed proposed findings of fact and conclusions of law. The district court specifically rejected the School Board's proposed conclusion of law that, because the lease was entered into without the approval required by Section 13-6-2.1(A), it was invalid as a matter of law. Further, the court did not make any explicit findings of fact or conclusions of law regarding the validity of the lease. Nevertheless, the district court entered a final judgment dismissing the School Board's suit in its entirety. The court ruled that doctrines of equity barred the School Board from challenging the validity of the lease and from suing Artesanos and Gonzales for forcible entry or unlawful detainer. The School Board timely appealed the judgment.

Artesanos and Gonzales then filed a motion for attorney fees in the district court pursuant to Rule 1-011, alleging that the lease was at all times valid and that the School Board's suit was brought in bad faith because it was not supported by evidence. After oral argument, the district court granted Defendants' Rule 1-011 motion without making any findings of fact or stating a basis in law. The School Board appealed the sanction. The appeals are consolidated here.

**DISCUSSION**

"It is a basic maxim that equity is ancillary, not antagonistic, to the law. Equitable relief is not available when the grant thereof would violate the express

6

provision of a statute." *Coppler & Mannick, P.C. v. Wakeland*, 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 (internal quotation marks and citation omitted). Our cases that determine whether equitable doctrines may be applied to governmental entities hold true to this maxim. *See, e.g.*, *Rainaldi v. Pub. Emps. Ret. Bd.*, 115 N.M. 650, 658, 857 P.2d 761, 769 (1993) (recognizing that "estoppel cannot lie against the state when the act sought to be carried out through the use of estoppel is contrary to law"); *Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 26, 136 N.M. 440, 99 P.3d 690 ("Estoppel cannot lie against the state when the act sought would be contrary to the requirements expressed by statute."). Because the district court cannot apply equitable doctrines to circumvent statutory requirements, we must first decide whether the provisions of Section 13-6-2.1(A) are mandatory. *See Waters-Haskins v. N.M. Human Servs. Dep't*, 2009-NMSC-031, ¶ 17, 146 N.M. 391, 210 P.3d 817 (stating that equitable estoppel can only bar those rights or actions over which an agency has discretionary authority). After deciding whether board of finance approval was a mandatory precondition in order for the lease to be valid, we turn to whether the equitable doctrines of estoppel, laches, unclean hands, and waiver are available affirmative defenses for Defendants in this case.

**Standard of Review**

To the extent this appeal requires us to interpret Section 13-6-2.1(A), our review is de novo. *See Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61 ("The meaning of language used in a statute is a question of law that we review de novo." ). "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *Albuquerque Bernalillio Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494 (internal quotation marks and citation omitted). "We look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (alteration, internal quotation marks, and citation omitted). "Statutory language that is clear and unambiguous must be given effect." *Id.* (internal quotation marks and citation omitted).

We review the district court's application of equitable doctrines under the abuse of discretion standard. *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 697, 858 P.2d 66, 73 (1993); *Vill. of Wagon Mound v. Mora Trust*, 2003-NMCA-035, ¶ 25, 133 N.M. 373, 62 P.3d 1255. We find abuse of discretion when the district court's decision is "clearly untenable or contrary to logic and reason." *Cont'l Potash*, 115 N.M. at 697, 858 P.2d at 73 (internal quotation marks and citation omitted).

**The Lease Is Invalid as a Matter of Law**

At the time the parties attempted to enter the lease, the relevant statutory provision provided:

> [A]ny sale, trade or lease for a period of more than five years but less than twenty-five years in duration of real property belonging to any state agency, local public body, school district or state educational institution or any sale, trade or lease of such real property for a consideration of more than twenty-five thousand dollars ($25,000) but less than one hundred thousand dollars ($100,000) shall not be valid unless it is approved prior to its effective date by the state board of finance.

Section 13-6-2.1(A). There is no dispute that the lease at issue is governed by the statute nor do the parties disagree that the above language is mandatory. Indeed, Artesanos concedes that "[o]ur State's statutes should always be enforced." We nevertheless briefly address the statute's requirement that a lease of more than five years, as was the case here, "shall not be valid unless it is approved prior to its effective date by the state board of finance." Section 13-6-2.1(A). By the use of "shall" in the statute, the Legislature expresses "a duty, obligation, requirement or condition precedent." NMSA 1978, § 12-2A-4 (1997). "It is widely accepted that when construing statutes, 'shall' indicates that the provision is mandatory, and we must assume that the Legislature intended the provision to be mandatory absent a[] clear indication to the contrary." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 22, 146 N.M. 24, 206 P.3d 135. The language of Section 13-6-2.1(A) is clear and unambiguous, and Section 12-2A-4 defines the word

9

"shall" as used in the statute here to create an obligation. Because there is no ambiguity in statutory language, we need proceed no further in our construction analysis. *Marbob Energy Corp.*, 2009-NMSC-013, ¶ 9 ("Only if an ambiguity exists will we proceed further in our statutory construction analysis."). Applying the plain meaning rule, a lease that falls under the definition of Section 13-6-2.1(A) must be approved by the board of finance in order for it to be legally valid.

Furthermore, this Court's holding in *State ex rel. Madrid v. UU Bar Ranch Ltd. Partnership*, 2005-NMCA-079, 137 N.M. 719, 114 P.3d 399, is dispositive. There, the State brought action against a private landowner to quiet title. *Id.* ¶ 8. More than a decade earlier, the state highway department executed a formal declaration of vacation and abandonment of the road. *Id.* ¶ 4. It was undisputed that the department intended to relinquish control of the road. *Id.* ¶ 12. However, the state failed to obtain board of finance approval as required by statute. *Id.* ¶ 13. The relevant statute in that case states,

> Any state agency or local public body is empowered to sell or otherwise dispose of real or personal property belonging to the state agency or local public body. No sale or disposition of real or personal property having a current resale value of more than two thousand five hundred dollars ($2,500) shall be made by any state agency or local public body unless the sale or disposition has been approved by the state board of finance.

*Id.* ¶ 14 (quoting NMSA 1978, § 13-6-2(A) (1984) (amended 2007)). We interpreted the statutory language de novo. *UU Bar Ranch*, 2005-NMCA-079, ¶ 11. Guided by

10

the principle that statutory language that is clear and unambiguous must be given effect and because the use of the word "shall" generally imposes a mandatory requirement, we held the language of Section 13-6-2(A) was mandatory. *UU Bar Ranch*, 2005-NMCA-079, ¶ 19. Although the result may have seemed harsh given the length of time that had passed, the highway department's intent to abandon the road, and its belief that it had followed the appropriate procedures, we concluded these facts were inconsequential to our holding. The statute had a mandatory precondition, and the parties' failure to secure board of finance approval rendered the state's abandonment of the road invalid. *Id.* ¶ 19.

Just as the statute in *UU Bar Ranch* imposed a mandatory precondition, so it does here. Artesanos argues that *UU Bar Ranch* is distinguishable because that case involved the sale of land while this one is based on estoppel. We disagree that this single difference renders *UU Bar Ranch* inapplicable to the facts of this case. The School Board and Artesanos were required to get approval from the board of finance before entering into the agreement in order for the lease to be valid. They did not do so. Moreover, Artesanos' argument that it intended to enter into a valid lease and its belief the lease was valid for seven years is irrelevant to our analysis. *See UU Bar Ranch*, 2005-NMCA-079, ¶¶ 5-6, 10 (concluding that abandonment of the road was invalid as a matter of law when abandoned contrary to statute, even when the state

intended to abandon the road, followed the procedures it believed were required, and multiple state agencies and the governor's office issued letters declaring the road abandoned, and the state treated the road as abandoned for more than a decade). Because the parties failed to obtain approval from the board of finance, the lease between the School Board and Artesanos is invalid. We hold that the district court erred when it failed to construe the language of Section 13-6-2.1(A) as mandatory and, therefore, that the lease was invalid as a matter of law.

**Equitable Doctrines Do Not Apply in This Case**

Having held the provisions of Section 13-6-2.1(A) are mandatory and that lack of board of finance approval renders the lease invalid, we now turn to Defendants' argument that the district court properly applied doctrines of equitable estoppel to bar the School Board's suit. We disagree and hold that equitable doctrines are inapplicable in this case for the reasons that follow.

It is well established that our courts will not apply equitable estoppel when statutory mandates are clear, and the result would be contrary to the express provisions of the statute. *See Trujillo v. Gonzales*, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987) (holding that the county is not estopped from denying it had entered an oral contract when the alleged contract was entered contrary to statutory requirements); *UU Bar Ranch*, 2005-NMCA-079, ¶ 30 (concluding that affirmative

defense of equitable estoppel was not available to the defendant who relied on the opinions and advice of government officials that were contrary to law when the result would be to circumvent statutory requirements). The district court's "discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law." *Cont'l Potash*, 115 N.M. at 697, 858 P.2d at 73 (reviewing the district court's application of equitable estoppel). Accordingly, equitable estoppel will not lie with the state when the result is to circumvent statutory requirements. Here, the district court acted contrary to law, rather than in conformity, when it applied equitable doctrines against the School Board even though Section 13-6-2.1(A) pertaining to board of finance approval was mandatory.

It is unclear from the record whether the district court found the lease to be valid or whether it simply applied equitable doctrines to find a lease in equity. The School Board argues the district court found the lease valid. The Defendants, on the other hand, simultaneously assert that the district court made no findings regarding the validity of the lease, but they believe the lease is valid. In practicality, it does not matter. By estopping the School Board from challenging the validity of the lease and barring its suit for forcible entry and unlawful detainer, the district court erred in applying the equitable doctrines of estoppel and laches to give Defendants possessory rights to La Cienega under the lease. The doctrine of estoppel does not create rights

13

or benefits to which there is no entitlement. *Rainaldi*, 115 N.M. at 659, 857 P.2d at 770. Because we determine that the lease was invalid, it follows that neither Defendants have a legal right to possession of La Cienega in equity. To hold otherwise would circumvent the statutory language contained in Section 13-6-2.1(A) requiring board of finance approval, a result we expressly rejected in *UU Bar Ranch*. 2005-NMCA-079, ¶ 30. Consequently, the district court's exercise of discretion in recognizing the validity of the lease was contrary to law.

Defendants contend that, notwithstanding the issue of the lease's validity, equitable doctrines nevertheless apply in this case. We are not persuaded. Our courts are instructed that "[equitable e]stoppel is rarely applied against the state or its governmental entities, and only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 22, 131 N.M. 450, 38 P.3d 891; *see Vill. of Angel Fire v. Bd. of Cnty. Comm'rs of Colfax Cnty.*, 2010-NMCA-038, ¶ 24, 148 N.M. 804, 242 P.3d 371. Even in those circumstances, the party raising estoppel must show the result of estoppel would not be contrary to statutory requirements and must establish the six essential elements of estoppel. *Waters-Haskins*, 2009-NMSC-031 ¶¶ 16-17, 21 (estopping the state only after first determining whether the state was acting in its discretionary authority, the

basic elements of estoppel were met, and right and justice demanded it).  In this case, Defendants have not demonstrated that any exceptional circumstance exists, and we have found none.  Therefore, we need not conduct any further analysis.  In short, the statutorily imposed obligation for parties to obtain board of finance approval prior to entering into the lease forecloses the application of equitable doctrines against the School Board.

We recognize that Section 13-6-2.1(A) does not specifically impose the duty of obtaining board of finance approval of a lease on either party.  And in this case neither party took responsibility to ensure the lease was approved by the appropriate authority.  The School Board relied on State Department of Education approval, assuming if other approval was required, the State would take care of it.  Artesanos relied on assurances from the School Board, never retaining counsel of their own prior to entering into a long-term lease with a governmental entity.  No one disputes that Artesanos was formed with the worthy goal of helping people in the community and that it did so by offering educational activities such as art, computer, and physical education classes, as well as welfare services and an after-school program for at-risk children.  However, Artesanos had an obligation to know the law before it entered into the lease  with the School Board.  It is a long standing maxim that ignorance of the law is no excuse.  *Kelley v. Marron*, 21 N.M. 239, 246, 153 P. 262, 264 (1915).  The

15

Legislature meets, enacts, and publishes law so that the public has access to know what the law is. *Id.* In this case, Section 13-6-2.1(A) was published eleven years prior to the School Board and Artesanos attempting to enter into the lease. Both the School Board and Artesanos had access to the law identifying what approvals were necessary in order to enter into a valid lease. Accordingly, Artesanos is now foreclosed from asserting that the equitable doctrines of estoppel and laches apply in such nondiscretionary matters where the statutory language is mandatory.

**The District Court Erred in Granting Rule 1-011 Sanctions**

The School Board argues that the district court erred when it imposed Rule 1-011 sanctions because the School Board had good grounds on which to bring the suit and because the district court provided no factual or legal basis for the award. We agree.

We review the district court's grant of Rule 1-011 for an abuse of discretion. *State ex rel. N.M. State Highway and Transp. Dep't v. Baca*, 120 N.M. 1, 8, 896 P.2d 1148, 1155 (1995). "A court may award attorney fees in order to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, ¶ 14, 145 N.M. 372, 198 P.3d 871 (alteration, internal quotation marks, and citation omitted). "Rule [1-0]11 was designed to encourage honesty in the bar when

16

bringing and defending actions and ought to be employed only in those rare cases in which an attorney deliberately presses an unfounded claim or defense." *Rivera v. Brazos Lodge Corp.*, 111 N.M. 670, 674, 808 P.2d 955, 959 (1991) (alteration, internal quotation marks, and citation omitted).

Defendants assert that the district court correctly determined that the School Board violated the "good grounds" provision of Rule 1-011. Specifically, they argue that the School Board brought the lawsuits in bad faith because the suits were not supported by evidence. We do not address Defendants' specific allegations because the district court failed to point us to any in its order granting attorney fees. The pertinent provision of Rule 1-011(A) states,

> The signature of an attorney . . . constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

Our courts have interpreted the good grounds provision to allow for sanctions when a pleading asserts a claim that is not warranted by existing law or a reasonable argument for the extension of existing law. *Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 11, 140 N.M. 395, 142 P.3d 983. We ask whether the challenged pleading asserts a colorable claim and apply a subjective standard to evaluate it. *Id.* Under the subjective standard, any violation depends on what the attorney knew and believed at the relevant time and if the attorney was aware a particular pleading should not have

17

been brought. *Id.* For Rule 1-011 sanctions to stand, there must be subjective evidence that the attorney willfully violated the rule. *Id.*

Here, we conclude that the School Board brought a colorable claim challenging the validity of the lease and suing for forcible entry or unlawful detainer; therefore the imposition of Rule 1-011 attorney fees is inappropriate on this ground. The record establishes that, at the time the School Board brought suit, the filing attorney had knowledge of the provisions of Section 13-6-2.1(A), that neither the School Board nor Artesanos had evidence of board of finance approval of the lease, and that this Court's holding in *UU Bar Ranch* was likely applicable to the facts of this case. There is no evidence the School Board's attorney deliberately pressed an unfounded claim. To the contrary, the evidence in the record—further bolstered by our holding that the lease is invalid—supports the School Board's assertion that it filed suit in compliance with the good grounds provision of Rule 1-011. As we have noted, the district court entered no findings of fact or conclusions of law with regard to the imposition of the Rule 1-011 sanctions. However, to the extent the district court believed that the School Board's suit was frivolous because it found the lease to be valid, the district court's view both of the lease and the legal application of Rule 1-011 is erroneous. We reverse the order granting attorney fees.

18

Additionally, we note the award of Rule 1-011 attorney fees must be supported by particularized findings of misconduct. *See, e.g.*, *Baca*, 120 N.M. at 8, 896 P.2d at 1155 ("[G]eneralized conclusions, without more, do not justify a finding of bad faith sufficient to support an attorney[] fee award."). Here, the district court made no particularized findings of fact and offered no legal grounds for the award of attorney fees. After oral argument the district judge ruled, merely stating,

> Based on everything that has gone on with this case, regardless of the fact that this court would not grant any type of motion to dismiss or any other type of motion because that is not the basis for what I am going to rule on. I agree with Mr. Martín, and I am going to award him the attorney fees that he has requested.

The court's written order is no more clear, stating in its entirety,

> This matter having come before this Court on the [m]otion filed by . . . Defendants for payment of attorney fees pursuant to Rule [1-0]11, this Court having considered the evidence and having heard oral argument from the parties and being otherwise fully advised in the premises, finds said [m]otion well taken and is hereby granted.
> It is therefore ordered that Defendants be awarded their attorney fees in the amount of $49,168.20 inclusive of gross receipts taxes.

These rulings are insufficient to support an award of attorney fees pursuant to Rule 1-011, as they give neither the parties nor this Court any basis for its ruling. Without specific findings, reference to some evidence, or an explanation of how the court finds grounds to support a Rule-1-011 sanction, the award of attorney fees cannot stand. *Cf. Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 19, 140 N.M. 637, 145 P.3d 117

19

("The district court did not abuse its discretion in imposing sanctions pursuant to Rule 1-011 because it did so based on findings of fact and conclusions of law that are supported by evidence in the record."). The Rule 1-011 sanctions are unsupported, and we reverse the district court's grant of attorney fees.

We do not address Defendants' arguments seeking sanctions for the School Board's pre-litigation conduct or conduct contemporary to the litigation but not before the district court for two reasons: (1) the district court issued no findings regarding these arguments, and (2) the district court's inherent powers to sanction do not extend to pre- or extra-litigation conduct. *Baca*, 120 N.M. at 8, 896 P.2d at 1155 ("[A] court's inherent authority extends to all conduct before that court and encompasses orders intended and reasonably designed to regulate the court's docket, promote judicial efficiency, and deter frivolous filings.")

**CONCLUSION**

For the reasons set forth above, we hold that the lease between the School Board and Artesanos is invalid and that equitable doctrines do not apply in this case. Therefore, we reverse the district court's judgment in favor of Artesanos. Further, we reverse the district court's order awarding Rule 1-011 attorney fees to Defendants.

**IT IS SO ORDERED.**

_____

20

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**