The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: August 31, 2023

**No. A-1-CA-38739**

**DAVID N. STANLEY,**

Plaintiff-Appellant,

v.

**NEW MEXICO GAME COMMISSION**
**and STATE OF NEW MEXICO,**

Defendants-Appellees,

and

**BOARD OF COUNTY COMMISSIONERS**
**OF MORA COUNTY,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Emilio J. Chavez, District Court Judge**

Atler Law Firm, P.C.
Timothy J. Atler
Jazmine J. Johnston
Albuquerque, NM
for Appellant

Kerry Kiernan, P.C.
Kerry Kiernan
Albuquerque, NM

Walcott, Henry & Winston, P.C.
Donald A. Walcott
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Nicholas M. Sydow, Civil Appellate Chief
Neil R. Bell, Assistant Attorney General
Santa Fe, NM

for Appellees

New Mexico State Land Office
Ari Biernoff, General Counsel and Special Assistant Attorney General
Santa Fe, NM

for Amicus Curiae Stephanie Garcia Richard, NM Commissioner of Public Lands

**OPINION**

**ATTREP, Chief Judge.**

{1}     Plaintiff-Counterdefendant David Stanley appeals the district court's final judgment dismissing his complaint for quiet title and declaring certain roads traversing Stanley's property public under various theories, including by prescriptive easement. Stanley also appeals the district court's cost award. Although we remand for certain, limited findings regarding the widths of the roads deemed public by prescriptive easement, we otherwise affirm.

**BACKGROUND**

{2}     The litigation in this case, which lasted nearly eight years, began as Stanley's lawsuit to quiet title to his property consisting of approximately 15,000 non-contiguous acres in Colfax and Mora Counties (the Stanley Property), surrounded by, and interspersed with, state trust lands. As relevant to this appeal, Stanley's complaint named the New Mexico Game Commission [1] and the boards of commissioners of Mora and Colfax Counties as defendants. The State of New Mexico subsequently intervened on the ground that it had an interest in preserving widespread access to state trust lands. The State of New Mexico, the Game

---

[1]Stanley initially named the New Mexico Department of Game and Fish as a defendant, but by agreement of the parties, the district court substituted it with the Game Commission.

Commission, and Mora County[2] all counterclaimed against Stanley, collectively alleging that the public had a right to travel on various roads traversing the Stanley Property because the roads were public—either by prescriptive easement or pursuant to 43 U.S.C. § 932 (repealed 1976)[3]—and title in fee simple to one of the roads, State Road 199, was held by the Game Commission pursuant to Chapter 180 of New Mexico Laws of 1929 (hereinafter the 1929 Law). Meanwhile, Colfax County disclaimed any interest in the Stanley Property (other than its inchoate tax lien) and stipulated to judgment being entered against it. Following an eleven-day bench trial, including a site visit, the district court entered a judgment dismissing all of Stanley's claims with prejudice and granting the State's counterclaims, declaring that eleven roads traversing the Stanley Property are public by prescriptive easement, that six of those same roads are public pursuant to 43 U.S.C. § 932, and that the Game Commission possesses title in fee simple to State Road 199 pursuant to the 1929 Law. Additional facts relevant to the resolution of this appeal are addressed as necessary below.

---

[2] Unless otherwise relevant, we refer to these parties collectively as "the State."

[3] *See* Rev. Stat. 2477, Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (codified at 43 U.S.C. § 932), *repealed by* Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2793.

**DISCUSSION**

{3}    Stanley asserts numerous claims of error on appeal. First, Stanley argues the district court's judgment should be reversed as to any road located within Colfax County because the court abused its discretion by not finding the county an indispensable party that could not be joined. Given the procedural history of this case, discussed below, we conclude the district court committed no error in its indispensable-party ruling. Second, Stanley advances numerous arguments why the district court erred in determining the eleven roads in question public by prescriptive easement, including that (A) insufficient evidence supports this determination; (B) certain legal principles negate this determination; (C) even if public prescriptive easements were established, Stanley extinguished those easements; and (D) the district court inadequately defined the precise locations and widths of the roads. We find Stanley's arguments, other than the one relating to the width of the roads, to be without merit, and we accordingly affirm the district court's determination that the eleven roads are public by prescriptive easement. In light of this holding, we do not reach Stanley's argument that the district court's determination that six of the roads are public pursuant to 43 U.S.C. § 932 was erroneous. Third, Stanley argues the district court erred in determining that the Game Commission possesses title in fee simple to State Road 199 based on collateral estoppel and the State's failure to meet the requirements of the 1929 Law. The former argument is not supported by the

3

record and the latter is not preserved. Fourth and finally, Stanley argues the district court's award of costs to the State was erroneous. Of the cost award arguments that are preserved, Stanley fails to convince us that any are erroneous. We take each of Stanley's arguments up in turn.

**I.      Colfax County as an Indispensable Party**

{4}      Stanley first argues that the district court's judgment should be reversed as to any road located within Colfax County because the court erred by not finding the county an indispensable party that could not be joined. As Stanley recognizes, our review of this issue is for abuse of discretion. *See Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 39, 132 N.M. 207, 46 P.3d 668. Only "when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case" will we find such an abuse. *Id.* (internal quotation marks and citation omitted). For the reasons we discuss, we find no abuse of discretion.

{5}      Several years into the litigation, Stanley moved, as relevant to this appeal, to dismiss the State's counterclaims on the ground that it had failed to join a necessary and indispensable party—namely, Colfax County. According to Stanley, Colfax County was an indispensable party to the State's counterclaims because the county would have a statutory duty to maintain any road the district court deemed "public" within its boundaries. The district court denied Stanley's motion, but ordered the State to join Colfax County as a counterclaim-defendant on the ground that the

4

county's rights and responsibilities might be affected should it eventually determine any of the roads public. Colfax County was duly served with the counterclaims and a copy of the district court's order setting forth its reasoning requiring joinder. Shortly thereafter, Colfax County moved to be dismissed from the case. Upon the State's stipulation, the district court dismissed Colfax County with prejudice. Less than one month later, Stanley moved for summary judgment on the State's counterclaims as they pertained to any roads located within Colfax County on the ground that the county was an indispensable party that could no longer be joined due to its dismissal with prejudice. The district court denied the motion, and Stanley now contends this was error because of Colfax County's purported statutory duty to maintain the roads.

{6}     Stanley's indispensable-party argument is governed by Rule 1-019 NMRA, *see Mendoza v. Isleta Resort & Casino*, 2020-NMSC-006, ¶ 33, 460 P.3d 467— authority Stanley fails to mention in his appellate briefing. In resolving an indispensable-party issue, Rule 1-019 requires district courts to undertake a three-part analysis. *See Gallegos*, 2002-NMSC-012, ¶ 39. First, the court must decide the threshold question of whether the absent party is "necessary" to the proceeding. *Id.* If the party is not necessary, then they are not indispensable and the analysis is over. *See id.* If the absent party is necessary, however, the court must next decide whether the party can, or cannot, be joined. *Id.* Third, "if the party cannot be joined, the court

decides whether 'in equity and good conscience' that party is indispensable to the litigation." *Id.* (quoting Rule 1-019(B)). Only if the absent party is indispensable should the court dismiss the action for nonjoinder. *See id.* Because Stanley fails to satisfy the threshold requirement of establishing that Colfax County was necessary to the litigation, we conclude the district court did not abuse its discretion in rejecting Stanley's indispensable party argument, and we do not address the remaining factors. *See Kaywal, Inc. v. Avangrid Renewables, LLC*, 2021-NMCA-037, ¶ 48, 495 P.3d 550 (addressing the first factor only because it was dispositive); *Moody v. Stribling*, 1999-NMCA-094, ¶ 15, 127 N.M. 630, 985 P.2d 1210 (providing that the party asserting relief under Rule 1-019(A) has the burden of establishing the necessary elements).

{7}     Under Rule 1-019, a party is "necessary" only if:

>       (1)     in his absence complete relief cannot be accorded among those already parties; or

>       (2)     he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

>>            (a)     as a practical matter impair or impede his ability to protect that interest; or

>>            (b)     leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Rule 1-019(A); *see Kaywal*, 2021-NMCA-037, ¶ 48 (providing that whether an absent party is "necessary" to the litigation is governed by Rule 1-019(A)). Nowhere

does Stanley argue that complete relief between him and the State could not be obtained without Colfax County's presence, as required by Rule 1-019(A)(1), and we fail to see how that could be the case. Indeed, the district court completely resolved the claims between the State and Stanley in favor of the State, and the State does not complain it was not afforded complete relief in the absence of Colfax County. *See Gen. Refactories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007) (explaining that the inquiry under the analogous federal rule of civil procedure considers only "whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial"); *see also Rogers v. Bd. of Cnty. Comm'rs of Torrance Cnty.*, 2020-NMCA-002, ¶ 10, 455 P.3d 871 (relying on the federal construction of a federal rule of civil procedure as persuasive authority where the language of the rule closely tracked the New Mexico rule). Instead, Stanley's argument implicates Rule 1-019(A)(2)(a)—i.e., that Colfax County had an interest in the matter because it might be responsible for maintaining any roads the district court deemed public, and that Colfax County had no ability to protect that interest in its absence.[4]

{8}     Stanley, however, disregards the procedural history of this case. Colfax County *was* joined (at Stanley's insistence) on the ground that it might have an

---

[4]Stanley makes no argument that Colfax County's absence would subject him, or any other party, "to a substantial risk of incurring double, multiple or otherwise inconsistent obligations," such that Rule 1-019(A)(2)(b) would be implicated.

interest in the subject litigation. Colfax County then successfully sought to be dismissed with prejudice from the case, notwithstanding its knowledge of why the district court had ordered it to be joined. Thus, Colfax County voluntarily "[*dis*]claim[ed] an interest relating to the subject of the action," Rule 1-019(A)(2), by absenting itself from the matter, and, by doing so, affirmatively made itself unnecessary, i.e., dispensable, to the litigation. *See Heimann v. Adee*, 1996-NMSC-053, ¶ 25, 122 N.M. 340, 924 P.2d 1352 (holding that a party was not a necessary party under Rule 1-019(A) where it "specifically disclaim[ed] any interest in the . . . proceedings"); *see also C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 1991-NMSC-049, ¶ 14, 112 N.M. 89, 811 P.2d 899 (holding that reversal was not warranted for failing to join a party where the party "knew of the litigation[,] . . . was aware of potential claims he might have had, yet chose not to participate and appears to have indicated expressly his desire not to pursue legal redress"); *Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002) ("Where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder was 'unnecessary.'").

{9}     The case of *United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901 (9th Cir. 1994), is instructive. In *Rose*, as here, the appellant argued that the district court erred by failing to join an indispensable party. *See id.* at 907. Also like here, the absent party in *Rose* "was originally a defendant in the action, but [it]

8

and the [appellee] stipulated to [its] dismissal." *Id.* at 908. The Ninth Circuit rejected the appellant's argument, finding it "inappropriate," given the procedural history, "for one defendant to attempt to champion [the] absent party's interests." *Id.* As the court explained, the absent party's voluntary dismissal from the action was the "best evidence" that its absence would *not* impair or impede its ability to protect its interests. *Id.* The same result holds true here—it is inappropriate for Stanley to champion Colfax County's interests where the county voluntarily sought to be dismissed from the action after having been joined on the ground that it might have an interest in the litigation. Put simply, because Colfax County absented itself from the litigation, it cannot be said that the county was necessary to the litigation under Rule 1-019(A)(2). *See Rose*, 34 F.3d at 908.

{10}     Stanley cites *Percha Creek Mining, LLC v. Fust*, 2008-NMCA-100, 144 N.M. 569, 189 P.3d 702, in support of his argument that the district court erred in not finding Colfax County an indispensable party. Specifically, Stanley contends that, under *Percha Creek Mining*, Colfax County will be adversely affected by the district court's judgment because it will have a statutory duty to maintain any roads deemed "public" by the district court. For its part, the State relies on *Kaywal* and *McGarry v. Scott*, 2003-NMSC-016, 134 N.M. 32, 72 P.3d 608, to distinguish *Percha Creek Mining* and to argue that Colfax County has no duty to maintain the particular roads

9

deemed public by prescriptive easement.[5] The parties' arguments, however, wholly overlook the critical question of whether Colfax County's absence from the litigation would impair or impede its ability to protect any interest that it *claimed* in the litigation. *See* Rule 1-019(A)(2)(a). As discussed, Colfax County's "voluntary dismissal indicates that [the county] [it]self did not feel that it was necessarily in [its] interest to remain a party in this action. This is the best evidence that [the county's] absence would not impair or impede [its] ability to protect [its] interests." *See Rose*, 34 F.3d at 908. In short, the district court did not abuse its discretion by finding that Colfax County was not an indispensable party, and thus the court did not err in entering judgment in the county's absence as to any road in Colfax County.

---

[5]We note the State's compelling argument as to why a county has no statutory obligation to maintain a road deemed public merely by prescriptive easement. *See Kaywal*, 2021-NMCA-037, ¶ 57 (providing that a finding that a road is public by prescriptive easement could not be used as a "sword" to impose maintenance obligations on a county absent formal acceptance of the road by the county). *But see Percha Creek Mining*, 2008-NMCA-100, ¶ 17 (concluding in dicta "that a declaration of a prescriptive public easement" would impose maintenance obligations on a county, but only because the Court was not presented with a more detailed argument to the contrary). Because a determination of this issue is unnecessary to our disposition, however, we do not opine about Colfax County's statutory duty, or lack thereof, to maintain any of the roads deemed public by prescriptive easement. *See OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 2022-NMCA-035, ¶ 46, 514 P.3d 40 ("It is not our practice to address issues unnecessary for the disposition of an appeal.").

## II.     Public Roads by Prescriptive Easement

{11}     Stanley next makes various arguments why the district court erred in determining that the eleven roads at issue in this case are public by prescriptive easement, including that (A) insufficient evidence supports this determination; (B) certain legal principles negate this determination; (C) even if public prescriptive easements were established, Stanley extinguished them; and (D) the district court inadequately defined the precise locations and widths of the roads. We address these arguments in turn.

## A.     Stanley Does Not Mount a Valid Sufficiency of the Evidence Challenge

{12}     Stanley contends that the State failed to prove public prescriptive easements over the eleven roads at issue in this case.[6] Because, as we discuss, Stanley does not mount a valid sufficiency challenge, his argument fails.

{13}     To resolve this issue, "we decide whether substantial evidence supports the district court's findings and whether these findings support the conclusions that the elements required to establish a public easement by prescription were . . . proved by clear and convincing evidence." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 9, 133

---

[6]Stanley takes an all-or-nothing approach in contending that the State did not prove public prescriptive easements. That is, Stanley does not challenge the findings as to any specific road, but instead appears to make a global challenge to all eleven roads. We accordingly do not endeavor to determine whether the evidence was sufficient to support a public prescriptive easement over some of the roads, but not others.

N.M. 50, 61 P.3d 176. To be clear and convincing, the evidence "must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind [must be] left with the abiding conviction that the evidence is true." *Brannock v. Lotus Fund*, 2016-NMCA-030, ¶ 25, 367 P.3d 888 (internal quotation marks and citation omitted). Notwithstanding this heightened burden of proof, "it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies." *McFarland Land & Cattle Inc. v. Caprock Solar 1, LLC*, ___-NMSC-___, ¶ 8, ___P.3d___ (S-1-SC-38934 July 13, 2023) (internal quotation marks and citation omitted). We thus "review the evidence in the light most favorable to the prevailing party, indulging all reasonable inferences in support of the [judgment] and disregarding all inferences or evidence to the contrary." *Ulibarri v. Jesionowski*, 2023-NMCA-008, ¶ 52, 523 P.3d 624 (internal quotation marks and citation omitted); *see also McFarland Land & Cattle*, ___-NMSC-___, ¶ 23 ("The question is not whether substantial evidence would have supported an opposite result; it is whether such evidence supports the result reached." (internal quotation marks and citation omitted)).

{14} To establish a public prescriptive easement over the eleven roads, the State had to establish by clear and convincing evidence that (1) the general public, (2) used the roads adversely, (3) in an open or notorious manner, (4) for at least ten continuous years. *Algermissen*, 2003-NMSC-001, ¶¶ 9-10. To satisfy its burden, the

State called numerous witnesses who testified to the usage of the roads for various purposes as far back as the 1930s. Several of the witnesses testified it was common knowledge that the roads were public and none intimated that permission to use the roads was sought from, or given by, Stanley's predecessors.[7] The district court issued scores of findings of fact and conclusions of law relevant to its determination that there exists public easements by prescription over the eleven roads. We do not endeavor to summarize all the district court's findings, but set forth those that are relevant to our analysis and that most directly establish the elements of a public prescriptive easement, *see id.*:

> [T]he . . . eleven roads were utilized by the public for a period of at least ten years, prior to the acquisition of portions of what is now the Stanley Property by . . . Stanley's father in 1980.

> The State's witnesses established by unrebutted testimony that the public has used the eleven . . . roads for a number of purposes over the past approximately 50-80 years, including travel to obtain provisions and sell lumber or agricultural produce; attending school, Mass or church services; work related to cattle ranching; gathering natural resources like wood, fruit and shed antlers; visiting relatives and friends; visiting locations of familial significance (such as birthplaces and grave sites); hunting, and recreation.

> . . .

> The State's witnesses established by unrebutted testimony that their use of the . . . roads has been open and notorious, as opposed to concealed.

---

[7]Stanley's father purchased the property in April 1980, and Stanley obtained it from his father around 2000.

13

> The State's witnesses established by unrebutted testimony that their use of the . . . roads has been adverse, i.e., has not at any point in time been permissive. . . . [T]here can be no evidence of any permission by Stanley prior to 1980, when his father first acquired portions of what is now the Stanley Property.
>
> The State's witnesses established by unrebutted testimony that their use of the . . . roads was not effectively interrupted at any point in time prior to 1980. (Emphasis omitted.)

{15} We generally require appellants contesting the sufficiency of a court's findings "to marshal all of the evidence in support of the findings and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable inferences attendant thereto, the evidence is insufficient to support the findings." *Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶ 18, 114 N.M. 755, 845 P.2d 849. We also require appellants to "set forth a specific attack on any finding," Rule 12-318(A)(4) NMRA, and to present "an organized, lucid argument," *State ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*, 2022-NMCA-026, ¶ 27, 511 P.3d 329. *See also Sanchez v. Saylor*, 2000-NMCA-099, ¶¶ 82-84, 129 N.M. 742, 13 P.3d 960 (rejecting a substantial evidence challenge because the appellant "fail[ed] to identify in the record any evidence that might support the [district] court's findings" and did not "tie[] the evidence to the court's findings in a manner remotely helpful to this Court"). Summarizing the evidence and making a generalized assertion that the evidence does not support the district court's findings of fact, without directly

14

attacking them, is insufficient. *See Tres Ladrones, Inc. v. Fitch*, 1999-NMCA-076, ¶ 17, 127 N.M. 437, 982 P.2d 488 (rejecting the contention that no evidence supported a finding because the appellant failed to properly attack the finding).

{16}     In this case, Stanley spends several pages summarizing his testimony and that of the State's witnesses, and highlighting evidence he thinks important to his position.[8] Based on this evidence, Stanley baldly asserts that twenty-four of the district court's findings "are challenged and are unsupportable." Not only does Stanley fail to set forth the evidence in the light most favorable to the outcome below and then cogently explain in a manner helpful to this Court why the evidence presented at trial is insufficient to support the district court's findings, but his generalized assertion does not come close to directly attacking the district court's findings with specificity. *See Jacob v. Spurlin*, 1999-NMCA-049, ¶ 27, 127 N.M. 127, 978 P.2d 334 ("[A] statement without argument is not sufficient to challenge a finding.").

---

[8]Stanley's testimony is irrelevant to our analysis for a couple of reasons. First, although we "may consider all the evidence in [a sufficiency] review," *McFarland Land & Cattle*, ___-NMSC-___, ¶ 23, we typically concern ourselves only with the evidence supporting the district court's findings, *see Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 28, 135 N.M. 607, 92 P.3d 53 ("To the extent that the evidence on a particular issue was conflicting, we disregard evidence and inferences that are contrary to the trial court's finding."). Second, by his own admission, Stanley has no personal knowledge of what transpired in the decades before his father acquired the property in 1980, and the district court's findings establishing public prescriptive easements are grounded in events occurring prior to 1980.

**{17}** As a consequence, the district court's findings—including those set forth above that satisfy the elements of a public prescriptive easement—stand. *See Baker v. Endeavor Servs., Inc.*, 2018-NMSC-035, ¶ 2, 428 P.3d 265 ("Unless findings are directly attacked, they are the facts in th[e appellate] court, and a party claiming error on the part of the trial court must be able to point clearly to the alleged error." (internal quotation marks and citation omitted)).

**B.    The Legal Principles Identified by Stanley Do Not Negate the District Court's Determinations**

**{18}** Stanley next identifies "three legal principles" he contends negate the district court's determinations as to two of the four elements of a public prescriptive easement—namely, adverse use and use by the general public. Even overlooking the above-identified shortcomings of Stanley's sufficiency challenge, his reliance on the legal principles he identifies is unavailing. We explain.

**1.    The Neighbor Accommodation Doctrine**

**{19}** Stanley first contends the district court should not have found adverse use under the "neighbor accommodation doctrine." "[A]dverse use is a use made without the consent of the landowner." *Algermissen*, 2003-NMSC-001, ¶ 11. Because adverse use may be difficult to prove due to the passage of time, the law allows for a presumption of adverse use where all the other elements of a prescriptive easement are met and there is no evidence of express or implied permission by the landowner. *See id.* ¶¶ 12-13. The district court relied on this presumption because none of the

16

State's witnesses testified that they sought or received permission to travel on the roads, and no evidence was presented at trial that such permission was given. Under the neighbor accommodation doctrine, however, "a court should not presume adverse use when the claimed right-of-way traverses large bodies of open, unenclosed, and sparsely populated privately-owned land."[9] *Id.* ¶ 16 (internal quotation marks and citation omitted). But the doctrine applies only where the landowners "*could not reasonably know* of passings over said lands." *Id.* ¶ 17 (internal quotation marks and citation omitted). The party seeking application of the doctrine—in this case, Stanley—has "the burden of producing evidence that the [neighbor accommodation doctrine] is applicable." *Scholes v. Post Off. Canyon Ranch, Inc.*, 1992-NMCA-078, ¶ 8, 115 N.M. 410, 852 P.2d 683.

{20}    The district court here did not apply the neighbor accommodation doctrine because it determined (1) the State presented sufficient evidence establishing Stanley's predecessors knew, or should have known, that members of the public were using the roads, and (2) Stanley failed in his burden of producing evidence establishing the applicability of the neighbor accommodation doctrine in accordance

---

[9]At one point in his discussion of the neighbor accommodation doctrine, Stanley contends that the doctrine "defeat[s] the concept of open or notorious use of the roads." But as *Algermissen* makes clear, the doctrine implicates the element of adverse use, not that the use be in an open or notorious manner. *See* 2003-NMSC-001, ¶ 16.

with *Scholes*. We detect no error in the district court's decision not to apply the neighbor accommodation doctrine.

{21} Stanley maintains the evidence established that Stanley's predecessors "were not aware, nor had reason to be, of any members of the general public using the roads," but fails to cite any evidence in support. "Where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal." *Wachoki v. Bernalillo Cnty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 15, 147 N.M. 720, 228 P.3d 504; *see also Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 (declining to review a contention that a finding was in error because the appellant did not direct the Court to contrary evidence). To the extent Stanley relies on one of the State's witnesses who testified that on a couple of occasions in 1963 he met one of Stanley's predecessors "while he was traveling the roads," we are not persuaded. The testimony supports, rather than detracts from, the district court's finding that Stanley's "predecessors in interest knew, or should have known, that members of the public were traveling on the claimed roads across the Stanley Property." We accordingly reject Stanley's reliance on the neighbor accommodation doctrine.

**2. The General Public's Use of the Roads**

{22} Next, Stanley argues, "Other than local neighbors and their friends or invitees, the only other road users in this case were hunters with required licenses and

individuals with a recreational permit." Stanley maintains that such a limited class of persons does not equate to "the general public." As set forth above, however, the district court found that "the public has used the . . . roads for a number of purposes over the past approximately 50-80 years, including travel to obtain provisions and sell lumber or agricultural produce; attending school, Mass or church services; work related to cattle ranching; gathering natural resources like wood, fruit and shed antlers; visiting relatives and friends; visiting locations of familial significance (such as birthplaces and grave sites); hunting, and recreation." Although perhaps not explicit, the clear implication from this finding is that a much broader class of persons used the roads than Stanley suggests. *See Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 41, 301 P.3d 387 (interpreting a district court's findings generously and considering an implicit finding when reviewing for substantial evidence); *see also Dawley v. La Puerta Architectural Antiques, Inc.*, 2003-NMCA-029, ¶ 19, 133 N.M. 389, 62 P.3d 1271 ("If, from the facts found, the other necessary facts may be reasonably inferred, the judgment will not be disturbed." (internal quotation marks and citation omitted)).

{23}     Moreover, as just clarified by our Supreme Court, even though "[t]he public character of a road must arise independently from the landowner's business and invitees[,] . . . [n]eighbors and their invitees are a class of the public, and evidence of their use can be considered along with other evidence of a road's public

19

character." *McFarland Land & Cattle*, ___-NMSC-___, ¶ 16. That is, "It does not make sense to conclude that a road with a clear reputation as public is made less so because neighbors use the road or because a claimant does not show a minimum amount of use by other members of the public." *Id.* All a claimant need prove is "that use of the road in question was free and common to all who had occasion to use it as a public highway." *Id.* (internal quotation marks and citation omitted). Such evidence exists in this case. Here, there was evidence to support the district court's findings that "the public," for decades prior to Stanley's father's acquisition of the property, freely traveled over the roads in question, and several witnesses testified that the roads were commonly understood to be open to the public. This is sufficient to support the district court's finding that the general public used the roads. *See id.* We accordingly reject Stanley's argument relating to the general public's use of the roads.

**3.    Recreational Use**

{24}    Lastly, relying on out-of-jurisdiction authority, Stanley argues, "[E]ven if it is determined that the general public used the roads prior to 1980, such public recreational use of unposted open fields and woodlands is presumed permissive." *But see Algermissen*, 2003-NMSC-001, ¶ 26 (observing that there is "no support in our cases" for the rule that "a prescriptive easement can never exist if its sole purpose is for recreation or the convenience of those who use it"). Stanley's argument,

20

however, ignores the fact that the district court expressly found the public used the roads for many non-recreational purposes, as just discussed. Nowhere does Stanley properly attack this finding and contend that the evidence was insufficient to support it. This finding thus stands. *See Lerma v. Romero*, 1974-NMSC-089, ¶ 2, 87 N.M. 3, 528 P.2d 647 ("This Court will not second-guess the trial court in its findings of fact and will accept them as the findings in this Court, since they are not directly attacked."); Rule 12-318(A)(4) ("The argument shall set forth a specific attack on any finding, or the finding shall be deemed conclusive."). Because of this, we reject Stanley's invitation to consider non-binding authority pertaining to whether the use of a road solely for recreational purposes is to be presumed permissive.

{25}    For the foregoing reasons, Stanley's reliance on the "three legal principles" he identifies in his briefing is unavailing. The district court's determination that public easements by prescription were created over the eleven roads in question stands. *See Corona*, 2014-NMCA-071, ¶ 26 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred.").

**C.    Stanley's Argument Pertaining to the Extinguishment of the Easements Is Not Persuasive**

{26}    Stanley next argues that even if public prescriptive easements were established over the eleven roads, the district court should have found that his actions after 1980 prescriptively extinguished the easements. We are not persuaded.

21

{27}    In support of his extinguishment argument, Stanley largely reiterates a set of facts he proposed that the district court rejected. *But see Jones v. Beavers*, 1993-NMCA-100, ¶ 18, 116 N.M. 634, 866 P.2d 362 ("The trial court's refusal to adopt the requested findings of fact is tantamount to a finding against [the party] on each of these factual issues."). Then, briefly referencing *Luevano v. Maestas*, 1994-NMCA-051, 117 N.M. 580, 874 P.2d 788, for the proposition that a prescriptive easement may be extinguished if the use of the easement is frustrated continuously for ten years, Stanley asserts that his actions since 1980 accomplished that purpose. The State responds, in relevant part, by arguing that (1) *Luevano* stands at most only for the proposition that a private, not a public, prescriptive easement may be extinguished,[10] and (2) extinguishment of a public prescriptive easement is generally prohibited by law. In support, the State cites, among other authorities, *Martinez v. Cook*, 1952-NMSC-034, 56 N.M. 343, 244 P.2d 134, in which our Supreme Court held that "the rights of the public in a street or alley cannot be divested by adverse

---

[10]*Luevano* stated the general proposition that a landowner may extinguish an easement through "continuous and uninterrupted" adverse use for the prescriptive period, but had no occasion to apply that principle. 1994-NMCA-051, ¶ 13. This Court recently held in *Mimbres Hot Springs Ranch, Inc. v. Vargas*, ___-NMCA-___, ___P.3d___ (A-1-CA-39046 Mar. 20, 2023), *cert. denied* (S-1-SC-39885, June 27, 2023), that "an easement will be prescriptively extinguished, partially or completely, if the servient owner adversely uses the property in an open or notorious manner continuously for the prescriptive period." *Id.* ¶ 1. *Mimbres Hot Springs Ranch*, however, did not involve a public prescriptive easement. *See id.* ¶ 2 (describing the private easement over a road that had been granted to the defendant's predecessor).

22

possession of another for the statutory period *unless* the public use has been abandoned." *Id.* ¶ 21 (emphasis added); *accord State ex rel. State Highway Comm'n v. Myers*, 1963-NMSC-117, ¶ 4, 72 N.M. 319, 383 P.2d 274 ("It is well settled that when an easement has been acquired for public use, . . . such easement is extinguished if the public use is subsequently abandoned."). In reply, Stanley ignores the State's reliance on *Martinez* and does not address the issue of abandonment. In light of these omissions, Stanley fails to persuade us that the district court erred in finding he did not extinguish the public prescriptive easements.[11] *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (providing that when a reply brief does not address an argument made in an answer brief, and the argument is not otherwise addressed in the brief in chief, "a failure to respond constitutes a concession on the matter"); *Corona*, 2014-NMCA-071, ¶ 26; *cf. Sitterly v. Matthews*, 2000-NMCA-037, ¶ 22, 129 N.M. 134, 2 P.3d 871 (providing that the issue of whether an easement has been abandoned is a question of fact reviewed for substantial evidence).

---

[11]To be clear, we do not hold in this case that a landowner may never, as a matter of law, prescriptively extinguish a public prescriptive easement absent abandonment of public use. We instead resolve this issue on the ground that Stanley did not respond to the State's facially compelling argument. As this Court stated in *Delta Automatic*, we have "no duty to search the record or research the law to 'defend' in a civil case a party that fails to defend itself on an issue." 1999-NMCA-029, ¶ 31.

23

**D.     We Uphold the District Court's Road Location Determinations but Remand to the District Court to Make Width Determinations**

{28}     Lastly, Stanley argues the district court erred by failing to adequately define the precise locations and widths of the eleven roads. We agree with Stanley that New Mexico law required the district court to make findings regarding the locations and widths of the roads. *See Jicarilla Apache Tribe v. Bd. of Cnty. Comm'rs*, 1993-NMCA-094, ¶¶ 50, 52, 116 N.M. 320, 862 P.2d 428, *rev'd on other grounds*, 1994-NMSC-104, 118 N.M. 550, 883 P.2d 136. As we explain, the district court's findings as to the locations of the roads were adequate, but the district court erred by not making width determinations.

{29}     In setting forth the locations of the eleven roads at issue in this case, the district court provided that they "exist on the ground as they are shown, designated and identified" on a composite map prepared by Stephen J. Toler, the State's expert surveyor, and described in an 83-page expert report prepared by Mr. Toler (the Toler Report). Mr. Toler prepared the composite map and the Toler Report after spending several days in the field surveying approximately 100 miles of roads and collecting over 18,000 GPS data points with an approximate accuracy of 1.5 meters. Mr. Toler then downloaded these data into a software program where the software "connected the dots" to form the roadway centerlines and overlaid the mapped roads onto United States Geological Survey 1:24000 quadrangle maps. For each of the eleven roads, the district court identified the specific pages of the Toler Report that provides a

24

detailed description of the road and its location, including the aforementioned maps created by using the 18,000-plus GPS data points. The Toler Report, however, does not describe the widths of each road, nor did the district court make any findings as to the roads' widths.

{30}     Turning to Stanley's arguments, we detect no error with respect to the district court's findings pertaining to the roads' locations. Stanley makes no suggestion as to how the locations of the roads might have been better identified. Instead, he merely cites *Jicarilla Apache Tribe* for the proposition that "[r]eliance on references to road location on geological survey maps is inadequate as a matter of law." But *Jicarilla Apache Tribe* says no such thing. Instead, it provides, "In defining the boundaries of the road, the [district] court should refer to fixed and obvious landmarks, or order that a survey be done and refer to that survey, or use some other, similarly definite method of locating the road." 1993-NMCA-094, ¶ 52; *see also id.* ¶ 51 (requiring a district court to "sufficiently identify the location of the road in its findings" but not "requiring absolute precision"). Not only did the district court effectively satisfy *Jicarilla Apache Tribe*'s suggestion to "order . . . a survey . . . and refer to that survey," *id.* ¶ 52, by incorporating the Toler Report and the maps created by Mr. Toler in its factual findings, but, absent any suggestion from Stanley as to how the locations of the roads might have been more precisely defined, we fail to see how this could have been accomplished. *See Corona*, 2014-NMCA-071, ¶ 26.

25

{31} As for the roads' widths, we agree the district court erred by not making width determinations. "[T]he width of a public road by prescription is the width reasonably necessary for public travel." *Jicarilla Apache Tribe*, 1993-NMCA-094, ¶ 48 (internal quotation marks and citation omitted). "When determining what width is reasonably necessary for public travel, a trial court should consider all relevant facts and circumstances peculiar to the case." *Id.* ¶ 49. The State concedes the district court did not make any findings regarding the roads' widths, but, given certain evidence adduced below, suggests that we should make our own width determinations. We decline to do so as it is peculiarly within the district court's dominion to make these determinations in the first instance. *See, e.g., State v. Gonzales*, 1999-NMCA-027, ¶ 9, 126 N.M. 742, 975 P.2d 355 ("It is a bedrock principle of appellate practice that appellate courts do not decide the facts in a case. Fact-finding is the task of the trial judge or the jury."). We therefore remand this matter to the district court to amend its findings to include the widths of the roads not otherwise determined.[12] *See Jicarilla Apache Tribe*, 1993-NMCA-094, ¶ 50 (remanding to the district court for a redetermination of the width of a road).

---

[12]We note that, as we discuss below, the district court determined that the Game Commission possesses fee simple title to one of the eleven roads, namely State Road 199, and that State Road 199 has a width of sixty feet. Stanley does not contest, and we do not upset, this determination.

26

## E. Conclusion on Public Prescriptive Easements

{32} In sum, we uphold the district court's ruling that the State proved by clear and convincing evidence public prescriptive easements over the eleven roads at issue in this case because Stanley does not persuade us that insufficient evidence supports this determination, or that the legal principles he identifies undermine such a determination; nor does Stanley persuade us that he extinguished the easements. We remand to the district court to enter amended findings pertaining to the widths of the roads.[13]

---

[13]Having affirmed the district court's determination that the public has a right to use the roads by way of public prescriptive easements, it is unnecessary to consider whether the district court correctly deemed six of the eleven roads public pursuant to 43 U.S.C. § 932. *See OR&L Constr.*, 2022-NMCA-035, ¶ 46. The district court concluded that six of the eleven roads were "public roads" under 43 U.S.C. § 932, which provides in full, "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932 allowed for a "right of way" over federal public lands, under certain circumstances, when the relevant land was still in the public domain. *See Wilson v. Williams*, 1939-NMSC-009, ¶¶ 17-19, 43 N.M. 173, 87 P.2d 683. The State does not argue that the public has any greater interest in a road deemed public under 43 U.S.C. § 932 than it does in a road deemed public by prescriptive easement. We fail to see how that could be the case given the creation of a "right of way" does not pass title to the land, *see Kinscherff v. United States*, 586 F.2d 159, 160 (10th Cir. 1978) ("Members of the public . . . do not have a 'title' in public roads."), but instead creates an easement. *See, e.g.*, *Wilson*, 1939-NMSC-009, ¶¶ 17-19 (explaining that a settler of land upon which a § 932 road has been established "takes subject to the public easement of a right of way on such road" (internal quotation marks and citation omitted)); *Ahtna, Inc. v. Dep't of Nat. Res.*, 520 P.3d 131, 139 (Alaska 2022) ("'Highways' granted by [§ 932] are rights of ways synonymous with easements, not fee simple interests, and therefore create only a right of use.").

27

**III.     Title to State Road 199**

{33}     Stanley argues the district court erred in determining the Game Commission has title in fee simple to approximately four miles of State Road 199 that traverses the Stanley Property because (1) the court should have applied the doctrine of collateral estoppel to preclude this result, or, alternatively, (2) the State of New Mexico never properly obtained title under the 1929 Law in the first instance. For the reasons that follow, we disagree.

**A.     The Record Does Not Support the Application of Collateral Estoppel**

{34}     In support of his collateral estoppel argument, Stanley relies on a previous Eighth Judicial District Court case, *State ex rel. Madrid v. UU Bar Ranch Limited Partnership*, No. D-809-CV-1998-00126. According to Stanley, the district court in that case "quieted title to part of State Highway 21 in favor of UU Bar Ranch and against the State and Game Commission, and in the district court's analysis it discussed State Road 199." Although Stanley recognizes this Court subsequently reversed the district court's quiet title judgment, *State ex rel. Madrid v. UU Bar Ranch Ltd. P'ship*, 2005-NMCA-079, ¶¶ 2, 32, 137 N.M. 719, 114 P.3d 399, he asserts that "the district court's findings regarding State Road 199 were never appealed" and thus have preclusive effect in this case. We cannot agree.

{35}     For collateral estoppel, or issue preclusion, to apply, the following four elements must be met:

28

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*State ex rel. Peterson v. Aramark Corr. Servs., LLC*, 2014-NMCA-036, ¶ 34, 321 P.3d 128 (internal quotation marks and citation omitted). With respect to the third and fourth elements, the issue that was actually litigated and necessarily determined in the prior litigation "must . . . concern[] the same ultimate issue or fact" at issue in the instant litigation. *DeLisle v. Avallone*, 1994-NMCA-012, ¶ 9, 117 N.M. 602, 874 P.2d 1266. "It is insufficient for the invocation of issue preclusion that some question of fact or law in a later suit was relevant to a prior adjudication"—that is, "the contested issue must have been litigated and necessary to the judgment earlier rendered." *Peterson*, 2014-NMCA-036, ¶ 34 (internal quotation marks and citation omitted). The party invoking the doctrine of collateral estoppel has the burden of establishing its applicability. *Silva v. State*, 1987-NMSC-107, ¶ 12, 106 N.M. 472, 745 P.2d 380. Our review is de novo. *Bank of N.Y. v. Romero*, 2016-NMCA-091, ¶ 15, 382 P.3d 991.

{36}    Here, as Stanley informs us, the district court's decision in *UU Bar Ranch* "discussed" State Road 199. And from the portion of the district court's *UU Bar Ranch* decision that Stanley directs us to, it appears the status of at least a portion of State Road 199 was somehow relevant to the prior litigation. This is inadequate,

however, given, as best we can tell, title to State Road 199 was not ultimately at issue in *UU Bar Ranch. See* 2005-NMCA-079, ¶¶ 2-3, 32. As *Peterson* explains, mere relevancy is insufficient; the issue must have been actually litigated and necessary to the judgment. 2014-NMCA-036, ¶ 34. On this point, Stanley provides no elucidation, and we cannot tell from the record before us whether a determination of the status of the portion of State Road 199 traversing the Stanley Property was necessary to the district court's *UU Bar Ranch* judgment. We therefore reject Stanley's collateral estoppel argument. *See Silva*, 1987-NMSC-107, ¶ 12 (providing that the burden is on the party invoking collateral estoppel to establish its applicability and that the doctrine is not "to be applied where the record is insufficient to determine what issues were actually and necessarily determined by prior litigation").

**B.      Stanley's Arguments Regarding the 1929 Law Are Not Preserved**

{37}      The district court concluded that the 1929 Law created and vested title in State Road 199 to the State of New Mexico. The district court also concluded that the New Mexico Highway Department (now the New Mexico Department of Transportation) properly conveyed title to the Game Commission by way of a quitclaim deed. The district court thus ruled that the Game Commission is the owner in fee simple of the approximately four-mile length of State Road 199 traversing the Stanley Property, and that the road has a width of sixty feet.

30

{38}     Stanley contends on appeal that "[t]he district court's reasoning . . . is riddled with analytical gaps." Stanley's argument, however, is difficult to parse. As best we can discern after careful review of his brief in chief, it appears Stanley is arguing that the 1929 Law cannot be interpreted as vesting the State of New Mexico with title to State Road 199 because the description of the road in the 1929 Law was too vague and the 1929 Law required the State of New Mexico to take additional steps, which it purportedly did not take, to acquire a right of way before title to the road would be vested.

{39}     Setting aside its lack of clarity, Stanley's argument is not preserved. "To preserve an issue for review on appeal, it must appear that the appellant fairly invoked a ruling of the trial court *on the same grounds* argued in the appellate court." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 30, 482 P.3d 1261 (emphasis added) (alteration, internal quotation marks, and citation omitted); *see also* Rule 12-321(A) NMRA. The preservation rule has "extraordinary importance" and "is not simply a technical bar to review employed by this Court to eliminate issues." *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 38, 125 N.M. 748, 965 P.2d 332. The rule "ensure[s] that (1) the district court is timely alerted to claimed errors, (2) opposing parties have a fair opportunity to respond, and (3) a sufficient record is created for appellate review." *Princeton Place v. N.M. Hum. Servs. Dep't*, 2022-NMSC-005, ¶ 21, 503 P.3d 319 (internal quotation marks and

31

citation omitted). Furthermore, for each argument presented, it is incumbent upon the appellant in their brief in chief to provide "a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on." Rule 12-318(A)(4). This statement helps "appellate courts to more efficiently and effectively perform their function, not only to determine whether a particular claim has been preserved, but also to understand the context in which the claim arose and the reasoning underlying the district court's decision." *Lasen, Inc. v. Tadjikov*, 2020-NMCA-006, ¶ 16, 456 P.3d 1090.

{40} Here, Stanley tells us that he preserved his *legal* argument relating to the 1929 Law by directing us to twenty-one of his proposed *findings of fact*. Nowhere in those proposed factual findings did Stanley argue that the description of the road in the 1929 Law was too vague to vest title in the State; nor did he make the nuanced and complex statutory construction argument he presents to us on appeal. Although Stanley proposed that the district court find the State of New Mexico never acquired a right of way to State Road 199, he never contended that the 1929 Law must be construed in the manner he now advances on appeal in order for title to be vested. Further, we decline to search the record to ascertain whether Stanley may have preserved these issues elsewhere. *See In re Norwest Bank of N.M., N.A.*, 2003-NMCA-128, ¶ 30, 134 N.M. 516, 80 P.3d 98. We accordingly do not consider

32

Stanley's unpreserved argument. *See Lasen*, 2020-NMCA-006, ¶ 17 (declining to review issues where the appellant's "general statements" in his proposed findings and conclusions "were woefully insufficient to preserve the detailed and specific" contentions he raised on appeal).

## IV.  The Cost Award

{41}  Finally, Stanley challenges the costs the district court awarded to the State pursuant to Rule 1-054(D) NMRA and NMSA 1978, Section 38-6-4 (1983). Specifically, Stanley asserts: (1) the fees associated with work performed by the assistants of the State's expert witnesses are not recoverable under Rule 1-054(D)(2)(g) or Section 38-6-4(B); (2) expert fees corresponding to vague time entries in the experts' invoices are not recoverable; (3) the experts' per diem expenses are excessive; (4) the district court erred by awarding costs associated with claims the State abandoned; and (5) the district court inappropriately relied on disputes involving the Stanley Property and the surrounding area that predated the instant litigation.[14] The district court has wide discretion in awarding costs, and our review is for an abuse of that discretion. *See Firstenberg v. Monribot*, 2015-NMCA-

---

[14]In reply, Stanley additionally argues that the district court impermissibly imposed on him the burden of proof to demonstrate the State's requested costs were unnecessary, unrelated, or unreasonable. We do not address this untimely argument. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 36, 145 N.M. 186, 195 P.3d 353 (providing that this Court does not "consider arguments raised in a reply brief for the first time").

062, ¶ 54, 350 P.32 1205; *Primetime Hosp., Inc. v. City of Albuquerque*, 2009-NMSC-011, ¶ 44, 146 N.M. 1, 206 P.3d 112. Taking each of Stanley's arguments in turn, we discern no abuse of discretion.

{42} First, as for the costs associated with the experts' assistants, we reject this argument as unpreserved. For his preservation statement, Stanley directs us to the objections he made to the State's requests for costs. But nowhere in those objections did Stanley argue that costs associated with the experts' assistants were not recoverable under Rule 1-054(D)(2)(g) or Section 38-6-4(B). Stanley also claims that he objected "to the expert witness costs awarded . . . at the costs award hearing." Stanley, however, does not cite the audio transcript of this hearing, as required by Rule 12-318(A)(4). *See* Rule 12-211(A)(1) NMRA (defining transcript of proceedings as the audio or stenographic transcript). It is not our duty to search the record to determine whether an appellant's claims are preserved. *See Lasen*, 2020-NMCA-006, ¶ 18. We accordingly reject this claim of error.

{43} Second, regarding the vagueness of the experts' time entries in their invoices, Stanley merely provides two examples and summarily claims, without citation to authority or additional argument, that "[w]ithout more, the district court could not have properly concluded that the invoices reflected recoverable expert witness costs." We decline to review this argument given its lack of development. *See Premier Tr. of Nev.*, 2021-NMCA-004, ¶ 10 ("[I]t is the appellant's burden to

34

demonstrate, by providing well-supported and clear arguments, that the district court has erred."); *State v. Stevenson*, 2020-NMCA-005, ¶ 20, 455 P.3d 890 ("We will not address an undeveloped argument or perform [an appellant's] research."); *see also Valerio v. San Mateo Enters., Inc.*, 2017-NMCA-059, ¶ 45, 400 P.3d 275 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." (internal quotation marks and citation omitted)).

**{44}** Third, Stanley asserts, "The experts' per diem expenses are also excessive and should be reduced significantly." Below, however, Stanley did not object to the purported excessiveness of the per diem expenses. Instead, he argued that these expenses were not recoverable *at all*. Stanley's argument below was incorrect, *see* Rule 1-054(D)(g) (allowing for per diem and mileage expenses pursuant to Section 38-6-4(B)), and his argument on appeal is unpreserved, *see Premier Tr. of Nev.*, 2021-NMCA-004, ¶ 30. We accordingly reject this claim of error as well.

**{45}** Fourth, Stanley points out that the State initially sought a determination that twenty roads traversing the Stanley Property were public, but that by trial the State sought such a determination only for eleven roads. From this, Stanley contends the district court erred by awarding all the costs associated with the experts when that award included work on roads the State did not ultimately pursue as being public. In support, Stanley cites an unpublished federal district court opinion in which the trial

35

court reduced an attorney fee request by ten percent for "work on abandoned claims and unsuccessful efforts to amend the pleadings." *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-CV-1719, 2018 WL 617972, at *9 (D. Minn. Jan. 29, 2018). Nowhere, however, does Stanley cite any law—either authoritative or persuasive—for the proposition that a district court abuses its discretion by not reducing a cost award under the circumstances presented here. In New Mexico, district courts have "wide discretion in the granting of costs," and, in similar situations, "are under no compulsion to apportion costs . . . ." *Baca v. Marquez*, 1987-NMCA-011, ¶ 7, 105 N.M. 762, 737 P.2d 543. It is not our job to conduct Stanley's research to determine whether the district court below abused its discretion by awarding the State all its expert costs. *See Guest v. Berardinelli*, 2008-NMCA-144, ¶ 29, 145 N.M. 186, 195 P.3d 353 ("Where a party does not cite to authority in support of a proposition of law, we decline to do the research on the party's behalf."); *Valdez v. Yates Petroleum Corp.*, 2007-NMCA-038, ¶ 24, 141 N.M. 381, 155 P.3d 786 (declining to review a novel argument when the appellant failed to cite any on-point authority). We therefore decline to review this claim of error.

{46}     Fifth and finally, Stanley argues the district court improperly relied on past litigation involving the Stanley Property and the surrounding area when it awarded the State its costs. But Stanley neglects to provide us with the full context of the

36

district court's statement he complains of. Specifically, the district court stated in its award of costs,

> The litigation involving and surrounding the [Stanley P]roperty has been on-going for more than forty (40) years. This case is not likely to be duplicated in other cases involving quiet title suits against the [S]tate. The court does not have evidence to support the "chilling effect" claimed by [Stanley] in reducing costs awarded to the [State].

We agree with the State that the district court's statement was in response to Stanley's argument that the State should not be awarded *any* costs on public policy grounds because of the purported detrimental effect it would have on future landowner-litigants. We therefore conclude the district court did not improperly rely on past litigation and thus reject Stanley's final challenge to the cost award.

**CONCLUSION**

{47}     For the foregoing reasons, we affirm the district court's rulings that Colfax County is not an indispensable party that cannot be joined, that the eleven roads at issue in this case are public by prescriptive easement, and that the Game Commission has title in fee simple to State Road 199. We remand to the district court to amend its findings to include the widths of the roads deemed public by prescriptive easement.

37

{48}    **IT IS SO ORDERED.**

_____
**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

`
_____
**KATHERINE A. WRAY, Judge**

38